CARLTON, J.,
dissenting:
¶ 15. I respectfully dissent from the majority’s decision. I submit that the trial court erred in this criminal case by excluding the defense expert witness testimony on DNA transfer. The record reflects no finding by the trial court that the defense’s discovery violation was wilful or motivated to gain tactical advantage, and the record shows the trial court failed to consider the sufficiency of lesser sanctions such as a continuance. I further respectfully submit that upon review, the record fails to support a showing or finding that the defense’s discovery violation was wilful or motivated to gain tactical advantage. I would, therefore, reverse and remand this case to the trial court for a new trial. See Williams v. State, 54 So.3d 212 (Miss.2011). In my view, a review of the application of precedent to the facts and context of this case shows that the trial court’s severe sanction violated Wright’s fundamental right to present witnesses on his behalf in this criminal prosecution.
*42 ¶ 16. As recognized in Williams, the trial court certainly possessed the discretion to determine that Wright committed a discovery violation by the late disclosure of an intended witness. Id. at 213 (¶ 5). The admission or exclusion of evidence by the trial court is reviewed for abuse of discretion . and will stand unless arbitrary and clearly erroneous. Id. “If a trial court is made aware of a party’s failure to comply with discovery requirements, it may admit the evidence, grant a continuance, or ‘enter such an order as it deems just under the circumstances.’ ” Id. at 215 (¶ 10). “If a trial court determines that the defendant’s discovery violation is ‘willful and motivated by a desire to obtain a tactical advantage,’ the newly discovered evidence or witnesses may be excluded.” Id. See URCCC 9.04. Furthermore, “[t]he admission or exclusion of evidence constitutes reversible error only where a party can show prejudice or harm.” Williams, 54 So.3d at 216 (¶ 14).
¶ 17. In turning to review the facts and context of this case, the record shows that at 3:37 p.m. in the afternoon on Thursday, July 22, 2010, less than five calendar days before trial, the State provided the defense with a supplemental disclosure of two potential witnesses and their qualifications. The defense noted that the late supplemental disclosure by the State left the defense with a little more than one full work day to respond to the State’s new witness disclosure. The supplemental disclosure by the State identified potential witnesses, Gayle Reed and Nell Brock, and the record shows these witnesses as the nurses who collected the DNA samples from Wright. In response to the State’s supplemental disclosure, on Sunday, July 25, 2010, Wright’s counsel sent a supplemental discovery list to the State identifying John C. Fisher as a defense expert witness expected to testify to matters including confirming or denying scientific evidence that may be presented by the newly discovered State witnesses, Reed and Brock. At trial, defense counsel argued that the defense contacted the State so close to trial because the State provided its supplemental witness disclosure late on Thursday afternoon July 22, 2010 at 3:37 p.m., leaving little time to respond earlier. Defense counsel further argued that the defense had provided the supplemental disclosure of Fisher as an expert witness the day before trial because the defense engaged no DNA expert until the defense received the State’s supplemental disclosure late in the afternoon of July 22, 2010. The defense argued that the State’s supplemental witnesses constituted the only witnesses who allegedly saw DNA collected from Wright and, without these witnesses, the State could not have admitted the DNA into evidence at trial. The defense further asserted that since the State had not previously identified or disclosed these witnesses as potential witnesses in the State’s case in chief, then Wright bore no duty or need to engage a DNA expert witness to attack the integrity of the collection process. The defense also asserted that, upon receipt of the State’s supplemental discovery, the defense was surprised by the forensic qualifications of the State’s new witnesses that extended beyond only nursing degrees.
¶ 18. The defense argued inequity in the exclusion of its DNA expert witness, offered to rebut the integrity of the collection process, since the trial court allowed the testimony of Reed, a supplemental witness on behalf of the State, who participated in collecting Wright’s DNA. The defense explained that the testimony of its expert witness related to the potential transfer of Wright’s DNA when collected and related to the potential transfer occurring if the victim rubbed against or came into contact with an object or garment *43 containing Wright’s DNA, like her mother’s underwear.
¶ 19. In response, the trial judge stated that he did not find the State’s witnesses to be critical and provided that Wright’s counsel should have obtained a DNA expert earlier in the case, noting the names of the witnesses on previously disclosed discovery documents. The trial court determined that the defense should have anticipated who the State would identify as witnesses. The record shows that the trial court further reflected on the inadequate and vague disclosure of the substance of the defense expert witness’s testimony provided by the defense in its supplemental discovery to the State. To more clearly ascertain the substance and relevance of the testimony of the defense expert witness, the trial court then held an in-camera discussion as to the relevance and helpfulness of the defense expert witness’s testimony pertaining to DNA transfer.
¶ 20. During the in-chambers review, the defense expert witness, Fisher, explained to the trial judge that he possessed expertise to testify as to the ease of transfer of DNA from one object to another. The record shows that the trial judge held this discussion in chambers after the court provided the assistant-district attorney with an opportunity to talk to Fisher, and after doing so, the State informed the trial court that it was not currently in a position to rebut the defense expert witness’s testimony. The assistant-district attorney explained that the defense expert witness was not a forensic DNA expert. The State explained that the defense expert witness possessed an expertise in molecular DNA and DNA transfer, and the State’s medical witnesses at trial lacked expertise in the area of DNA transfer. After listening to the defense expert witness’s proposed testimony, the trial judge stated, in part, as follows:
[A]t least one of the issues that would be a central reason I think for him to call you as a witness, and you can tell me whether or not it would fall in your area of expertise because I don’t know, it would have to do with the ability of ... a substance that contained DNA, such as seminal fluid or something like that, the ability of that substance and the DNA contained in it to be transferred from one, for example, to be transferred from one article of clothing onto either another article of clothing or onto the body of a person. The ease with which that can happen and matters such as that.
Fisher explained to the trial judge that he possessed knowledge in the area of DNA transfer and that it was extremely sticky in the sense that it will cling onto pretty much anything. Fisher further provided that if one wanted to take DNA from one object and place it onto another, then it would not be difficult to transfer the DNA from one place to another. After Fisher’s confirmation as to the substance of his testimony and expertise, the trial judge stated that it appeared through the questioning that the testimony could very well be relevant to the issue. However, the trial judge then stated that he fell back to the issue of discovery and ruled that he would not allow Fisher to testify. The record reflects that the trial court issued this ruling excluding the proposed defense testimony without a finding that the defense’s discovery violation was willful or motivated by tactical advantage and without considering the sufficiency of less harsh sanctions or remedies. I respectfully submit that based upon a review of the record, the record would not support such a finding in this case.
¶ 21. As previously acknowledged, the trial court excluded the defense expert witness without a finding that a continu- *44 anee or other remedy failed to provide the State with sufficient opportunity to meet the evidence. In reviewing whether the trial court considered the sufficiency of lesser sanctions, the record shows that the trial court provided the assistant-district attorney with time to consult with the proposed defense expert witness during trial, before holding the in-camera hearing as to the substance of the defense expert witness’s testimony. The assistant-district attorney informed the trial judge after that consultation that the State’s expert witness at trial was not prepared to address the testimony of the defense expert witness, but the record shows no consideration or discussion of any ability or inability of the State to obtain an expert qualified to testify regarding DNA transfer in the event the trial court granted a continuance or other remedy. See Williams, 54 So.3d at 215-16 (¶ 13) (explaining that the suspicious timing of a supplemental discovery disclosure failed to constitute a finding or showing of willfulness or motivation to gain tactical advantage).
¶ 22. I respectfully submit that we must not lose sight of the context of the defense’s supplemental witness disclosure. As previously noted, the record shows the defense provided the supplemental expert witness disclosure in response to the State’s late supplemental witness disclosure of witnesses necessary for the State to establish chain of custody to admit the DNA samples collected from Wright into evidence. The defense argued that the expert witness’s testimony relevantly explained the ease of the transfer when in contact with other items or objects potentially occurring in the collection process or potentially occurring if the victim wore her mother’s undergarments. In the context of this 'Case and consistent with supreme court precedent as set forth in Williams, I respectfully submit that the trial court erred in the severe sanction of exclusion of the defense expert testimony, and the trial court should have considered sufficiency of less severe sanctions since the record reflects no findings and the record fails to support findings of willfulness or motivation for tactical advantage.[2] The accused in a criminal prosecution possesses a fundamental right to present witnesses in his own defense. We must not overlook that the record shows that the trial court found the defense expert testimony relevant, but the trial court then excluded its admission due to the defense’s discovery violation without a record finding of willfulness or of motivation for tactical advantage and without consideration of whether other less severe sanctions could have provided the State a sufficient opportunity to meet the evidence. See id. I would, therefore, reverse and remand this case for a new trial.
IRVING AND GRIFFIS, P.JJ., JOIN THIS OPINION.

. We must always acknowledge that the defense possesses a fundamental right to present 'witnesses while also respecting the trial court’s authority to subject the attorney to appropriate sanctions for willful discovery violations. Here, however, the criminal defendant, not his counsel, received the severest sanction in the exclusion of his expert witness’s testimony to defend against the State's DNA evidence. The record alternatively reflects the State provided supplemental discovery with new. witnesses to testify as to the DNA collection only days before trial, but the State received no sanction. At trial, the defense counsel raised the issue of disparate treatment.